JERRY E. SMITH, Circuit Judge:
This case requires us to apply the doctrine of abatement ab initio to restitution and forfeiture orders where a criminal defendant dies while his appeal is pending. Concluding that, under the specific facts of this case, all consequences of the untested criminal conviction should abate, we DISMISS the appeal and REMAND with direction to VACATE the judgment of conviction and sentence, including the order of restitution, and to dismiss the indictment. We do not, however, direct the government to return monies paid as part of this ■particular Preliminary Judgment of Forfeiture.
I.
After a second trial following a vacated conviction, a jury found Andrew Parsons guilty of two counts of arson, four counts of mail fraud, and four counts of money laundering. Parsons allegedly set fire to his property and wrongfully received insurance proceeds to compensate for the loss. In addition to a verdict of guilty, the jury returned a special forfeiture verdict.[1] The district court sentenced Parsons to seventy-eight months’ imprisonment, a fine of $75,000, a special assessment of $1,000, restitution of $1,317,834.57 to the defrauded insurance companies, and three years’ supervised release.[2]
Parsons then informed the government that he wished to sell the three tracts. The government approved the sale of those tracts for $1,900,000 under a con *412 tract that would provide cash at closing of $1,000,000. That sale was completed, and a check for $970,826.90 was given to the United States in return for a release of liens.
The sale in question was completed pursuant to an agreement between Parsons and the United States. The government filed a motion describing the agreement. The motion states, in relevant part:
[B]ecause Defendant Parsons had no other apparent financial means with which to fully pay the Money Judgment in the amount of $970,826.90, the United States of America did not object to the. ... sale of [the three tracts], provided that a [government agent] be present at the real estate closing to receive a cashiers check....
Further, inasmuch as this case remains on appeal at this time, the United States of America agrees that in the event Defendant Parsons prevails in the final determination of this appeal, and no final judgment of forfeiture is entered in this case, that the [government] should return to Defendant Parsons the entire amount of $970,826.90, plus interest....
After the sale, the district court entered a Preliminary Judgment of Forfeiture of $970,826.90, pursuant to Fed.R.CRIm.P. 32.2(b).[3] The order states, in relevant part:
ORDERED that inasmuch as this case remains on appeal at this time, in the event Defendant Parsons prevails in the final determination of this appeal, and no Final Judgment of Forfeiture is entered in this case, the [government] shall return to Defendant Parsons ... the entire amount of $970,826.90, plus interest. ...
While this appeal was pending, Parsons died. This court allowed his estate to substitute itself for him as appellant, and the estate submitted a new appellate brief, arguing that Parsons’s death abated the conviction, restitution order, and forfeiture orders. The estate also protected its interests by arguing, in the alternative, that if the restitution and forfeiture orders were not automatically abated by Parsons’s death, the conviction should be reversed on grounds of violation of the Speedy Trial Act and inadequate nexus to interstate commerce.
A panel of this court upheld the restitution order and Preliminary Judgment of Forfeiture and rejected Parsons’s other merits issues raised on appeal. United States v. Estate of Parsons, 314 F.3d 745, 750 (5th Cir.2002), vacated for reh’g en banc, 333 F.3d 549 (5th Cir.2003). Recognizing that it was bound by United States v. Asset, 990 F.2d 208 (5th Cir.1993), and United States v. Mmahat, 106 F.3d 89 (5th Cir.1997), the panel concluded that “because the restitution order here is unquestionably compensatory in nature, it survives Parsons’s death.” Parsons, 314 F.3d at 750.[4]
*413 II.
Asset, Mmahat, and Parsons describe the current state of our abatement jurisprudence. “It is well established in this circuit that the death of a criminal defendant pending an appeal of his or her case abates, ab initio, the entire criminal proceeding.” Asset, 990 F.2d at 210.[5] That is, the appeal does not just disappear, and the case is not merely dismissed. Instead, everything associated with the case is extinguished, leaving the defendant “as if he had never been indicted or convicted.” Parsons, 314 F.3d at 749 (quoting United States v. Schumann, 861 F.2d 1234, 1237 (11th Cir.1988)).
With respect to restitution, we have looked to the purpose of the order to determine whether it abates with the conviction. “When restitution is ordered simply to punish the defendant, it is penal and abates with the rest of his conviction. When it is designed to make his victims whole, however, it is compensatory and survives his death.” Mmahat, 106 F.3d at 93. Additionally, abatement does not entitle a defendant to monies paid before death as part of a fine or restitution order.[6]
III.
Despite the common acknowledgment that abatement ab initio is a well-established and oft-followed principle in the federal courts,[7] few courts have plainly articulated the rationale behind the doctrine. Two primary approaches support abatement ab initio. The finality principle reasons that the state should not label one as guilty until he has exhausted his opportunity to appeal. The punishment principle asserts that the state should not punish a dead person or his estate. Although the finality principle best explains why criminal proceedings abate at death, finality does not justify the distinction between compensatory and penal restitution orders.
Under the finality rationale, we have described the entitlement to one appeal as follows:
[W]hen an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the *414 interests of justice ordinarily require-that he not stand convicted without resolution of the merits of his appeal, which is an “integral part of [our] system for finally adjudicating [his] guilt or innocence.”
United States v. Pauline, 625 F.2d 684, 685 (5th Cir.1980) (emphasis added, brackets in original) (quoting Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956)).[8] The defendant’s attack on his conviction tests previously unforeseen weaknesses in the state’s case or outright errors at trial.[9] Under this rationale, neither the state nor affected parties should enjoy the fruits of an untested conviction.
The second rationale focuses on the precept that the criminal justice system exists primarily to punish and cannot effectively punish one who has died. “[T]he purposes of criminal proceedings are primarily penal — the indictment, conviction and sentence are charges against and punishment of the defendant — such that the death of the defendant eliminates that purpose.” [10] The government and other circuits have mentioned this justification.[11]
Given that the doctrine of abatement ab initio is largely court-created and a creature of the common law, the applications of abatement are more amenable to policy and equitable arguments. Neither of the previously-articulated rationales fully explains our current approach to abatement, restitution orders, and fines paid before death. As we will explain, we adopt the finality rationale and adjust our restitution jurisprudence accordingly.
The punishment rationale supports our current distinction between penal and compensatory restitution orders[12] and justifies the line, with respect to fines, drawn at the time of death.[13] Punishment does not, however, adequately explain the other aspect of our abatement jurisprudence — the elimination of the criminal proceedings against that person. Presumably, under the punishment rationale, courts could retain the record of conviction and block proceedings that would punish the estate.[14]
*415 The finality principle provides a better explanation why all prior proceedings disappear. A defendant’s death during appeal forces a court to decide between disregarding a finding of guilt and entering an unreviewed judgment. Presumptions of innocence and a desire to ensure guilt naturally point to extinguishing all criminal proceedings.
The primary justification for the abatement doctrine arguably is that it prevents a wrongly-accused defendant from standing convicted. The Supreme Court and other circuits have recognized this justification for abatement. We now adopt it as the primary reason behind abatement and, by so doing, we reject Asset’s and Mmahat’s descriptions of the punishment justification.
Accordingly, regardless of its purpose, the order of restitution cannot stand in the wake of Parsons’s death. Because he now is deemed never to have been convicted or even charged, the order of restitution abates ab initio.[15]
IV.
Although the government may argue that this approach harms the interests of those allegedly injured, such an argument cannot outweigh the finality rationale. “[T]he goal of the [compensatory restitution] payment is ... to restore the victim’s losses.” Asset, 990 F.2d at 214. If the restitution order abates with the death of the defendant, those “victims” will not be made whole, or at least not by way of direct restitution from the defendant or his estate.[16]
The government’s position may have validity under the punishment rationale, but it has little force if the concern is finality and the right of the defendant to contest his appeal at least once. Any references to the wrongful nature of the defendant and his actions are conditioned on an appellate court’s upholding the conviction, as *416 suming the defendant pursues an appeal. The defendant’s death during the pen-dency of appeal pushes a court to nullify all prior proceedings. Despite what may have been proven at trial, the trial is deemed not to have taken place. Thus, at least in the eyes of the criminal court, the defendant is no longer a wrongdoer and has not defrauded or damaged anyone.
 These unfortunate situations also create the danger of misusing the term “victim” in different contexts — civil and criminal' — with the same force. One is not necessarily a victim of a crime because he suffers a loss at the hands of another. The loss may arise from poor decisions on the part of the alleged victim, poor drafting on the part of the attorneys, or even questionable conduct on the part of the defendant. None of these situations, however, necessarily warrants a criminal conviction. The abatement doctrine provides that one should not be permanently labeled as finally “convicted” while his first appeal is pending. That is to say, in abatement the criminal court essentially abdicates its power over the former defendant.[17]
V.
The aforementioned justifications for altering our abatement doctrine rely on equitable rationales. Perhaps more importantly, as the estate argues, our current willingness to let compensatory restitution orders survive the death of the defendant runs contrary to the text of the Victim and Witness Protection Act (“VWPA”), 18 U.S.C. § 3663(a)(1)(A).
The VWPA allows a court to enter a restitution order when “sentencing a defendant convicted of an offense.” 18 U.S.C. § 3663(a)(1)(A) (emphasis added). If death terminates the criminal case ab initio, the defendant no longer stands convicted. One might respond to this natural reading by arguing that “convicted of an offense” has force only on the day on which the restitution order is entered. Because the defendant stands convicted on the day the court enters the order, retaining the order after the defendant’s death would not conflict with the VWPA.
Additional text of the VWPA, however, suggests that “convicted” should not have force merely at the time of the restitution order. Section 3663(d) references 18 U.S.C. § 3664 as the enforcement mechanism for reimbursement orders. Section 3664(0 describes the effect of a conviction on future civil actions: “A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding.”
A standard canon of construction “provides that a word used in different parts of the statute should be construed to *417 have the identical meaning throughout the entire statute.”[18] If the narrower construction of “convicted” is applied to § 3664(Z), an estate would be estopped from denying important factual matters in a subsequent civil suit, even if the underlying conviction had been abated.[19] Just as a trial conviction, after abatement, should not estop an estate from mounting a defense in civil court, one whose conviction is abated no longer stands “convicted” for purposes of the VWPA.[20]
VI.
The estate argues that the finality principle also requires the government to return the money paid pursuant to the Preliminary Judgment of Forfeiture. The government stridently disagrees.
The panel noted that “the doctrine of abatement does not apply to fines, forfeitures, and restitution paid prior to a defendant’s death.” Parsons, 314 F.3d at 748 (emphasis added, citations omitted). Fines that have not yet been paid, however, abate in the same manner as do the prior criminal proceedings. Id. Asset and similar cases have distinguished between fines paid before and after a defendant’s death, based on the punishment rationale.[21]
The question is whether the tender to the government of the check for $970,826.90, at the real estate closing, was a voluntary, irrevocable payment, as the government contends, or was, instead, only a means of preserving assets pending the outcome of the appeal. The government argues that by giving the check, “Parsons paid and the government collected the Money Judgment of criminal forfeiture .... The United States collected Parsons’ payment in full satisfaction of the Money Judgment.”
The agreement and the order provide for full return of the money, with interest, if Parsons “prevails in the final determination of this appeal.”[22] Although, as ex *418 plained, we conclude that restitution orders against Parsons should abate with his death, neither the agreement nor the Preliminary Judgment of Forfeiture requires the government to return the already-paid funds.
“[T]he law ... existing at the time a contract is made becomes a part of the contract and governs the transaction.” Tex. Nat’l Bank v. Sandia Mortgage Corp., 872 F.2d 692, 698 (5th Cir.1989) (internal citation and quotation marks omitted) (applying Texas law).[23] When the government and Parsons entered into this agreement, abatement did not require the return of penalties paid before a defendant’s death.[24] Nothing in the agreement or the specific facts of this case suggests that the parties intended to avoid that preexisting rule.
Although the estate might receive the funds if Parsons “prevails” on appeal, he has not achieved a victory, taken any action, or made any substantive points worthy of overturning his conviction. Rather, at the time of his death, this court had made no decision on the merits of the appeal. Although, based on the abatement rationale, the restitution orders must abate, Parsons has not “prevailed” in any meaningful sense.
Presumably in an effort to protect his interests, Parsons voluntarily entered into the agreement memorialized in the Preliminary Judgment of Forfeiture. That agreement, however, did not adequately provide for his death and did not indicate that the parties wished to act outside the legal framework at the time they entered into the contract.[25] Consequently, although Parsons died, we have not validated any of his grounds for appeal, and he has not “prevailed.” He is not entitled to the return of the monies paid under the Preliminary Judgment of Forfeiture.
VII.
Thus, as part of ensuring that every defendant has an opportunity to challenge his conviction by one direct appeal, we expunge the criminal proceedings and the pending punishments attached to those proceedings if the defendant takes an appeal and dies during its pendency. In the instant case, this includes an unpaid restitution order. Based on the particular language of the Preliminary Judgment of Forfeiture, Parsons did not meet the judgment’s requirements, so we DENY his request to require the return of sums paid under that order.
This appeal is DISMISSED, and this matter is REMANDED with direction to VACATE the judgment of conviction and sentence, including the order of restitution, and to dismiss the indictment. To the extent that they are inconsistent herewith, Asset and Mmahat are overruled.

. Specifically, the jury found that Parsons had used $346,260 of the unlawfully-derived insurance proceeds, as set forth in counts 1-5 of the indictment, to construct a certain building and that he had unlawfully derived $970,826.90 from the offenses in counts 1-10.

. Although both parties state that the court issued forfeiture orders originating from the juiy’s special forfeiture verdict, the order of judgment only lists the imprisonment, fine, and restitution orders. Presumably, the restitution order incorporated the amounts listed in note 1, supra.

. At the sentencing hearing, the court indicated that the $1,317 million restitution order represented the full amount Parsons owed to his victims and that any sums recovered via forfeiture would apply against, that total amount. Because Parsons did not tender any other monies to the government, and because the district court did not enter any other temporary orders, no other portion of the restitution order is encompassed by the Temporary Judgment of Forfeiture.

. The panel nonetheless questioned the correctness of those decisions. Parsons, 314 F.3d at 750. The panel further questioned the logic of our caselaw in referring to "the strange situation of our reviewing a criminal conviction in what has become a hypothetical case.” Id. at 748.

. See also Mmahat, 106 F.3d at 93 (“Normally, the death of a criminal defendant during the pendency of his appeal abates the entire proceeding ab initio.”)-, United States v. Schuster, 778 F.2d 1132, 1133 (5th Cir.1985) (“Under the firmly established rule in this circuit, the death of a defendant pending conclusion of the direct criminal appeal abates, ab initio, not only the appeal, but the entire criminal proceeding.”).

. See, e.g., United States v. Zizzo, 120 F.3d 1338, 1347 (7th Cir.1997) (regarding fines and forfeitures); Asset, 990 F.2d at 214 (regarding restitution); Schumann, 861 F.2d at 1236.

. In applying Durham v. United States, 401 U.S. 481, 483, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971) (per curiam) (stating that "death pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception”), overruled on other grounds, Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976), other circuits follow the doctrine of abatement ab initio. See, e.g., United States v. Wright, 160 F.3d 905, 908 (2d Cir.1998) (quoting Durham, 401 U.S. at 481, 91 S.Ct. 858); United States v. Logal, 106 F.3d 1547, 1551 (11th Cir.1997) ("This circuit has adopted the general rule that the death of a defendant during the pendency of his direct appeal renders his conviction and sentence void ab initio; i.e., it is as if the defendant had never been indicted and convicted.”); United States v. Davis, 953 F.2d 1482, 1486 (10th Cir.1992) (quoting Durham, 401 U.S. at 483, 91 S.Ct. 858); United States v. Wilcox, 783 F.2d 44 (6th Cir.1986); United States v. Oberlin, 718 F.2d 894 (9th Cir.1983); United States v. Pauline, 625 F.2d 684 (5th Cir.1980); United States v. Moehlenkamp, 557 F.2d 126 (7th Cir.1977).

. Accord United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir.1977); see also Rosanna Cavallaro, Better Off Dead: Abatement, Innocence, and the Evolving Right of Appeal, 73 U. Colo. L.Rev. 943, 954 (2002) ("The abatement remedy relies significantly on a larger premise: a conviction that cannot be tested by appellate review is both unreliable and illegitimate; the constitutionally guaranteed trial right must include some form of appellate review.”).

. In Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and Evitts v. Lucey, 469 U.S. 387, 392, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the Court "require[d] the appointment of effective counsel for a criminal appellant pursuing a first appeal of right.” Clark v. Johnson, 227 F.3d 273, 283 (5th Cir.2000).

. Asset, 990 F.2d at 211; see also Mmahat, 106 F.3d at 93 (stating that "the abatement principle is premised on the fact that criminal proceedings are penal”).

. See, e.g., United States v. Dudley, 739 F.2d 175, 176 n. 2 (4th Cir.1984) ("A decedent can hardly serve a prison sentence.”). In its brief, the government makes a similar point: "Put another way, the doctrine of abatement is applied because it serves no purpose to punish a person who is dead.”

. Mmahat, 106 F.3d at 93 ("When restitution is ordered simply to punish the defendant, it is penal and abates with the rest of his conviction.”).

. Following death, the state retains already-paid fines but does not require payment of outstanding unpaid fines.

. The courts could use the punishment rationale to prevent use of the conviction in civil court and to retain the decedent’s good name. The former application could be accomplished without eliminating the conviction altogether, and the latter use does not seem significant enough to warrant extinguishing all prior proceedings.

. The dissent argues that restitution orders are "expressly compensatory, non-punitive, and equivalent to a civil judgment against a criminal defendant” and criticizes our approach as “treating the restitution order as abatable and therefore impliedly punitive.” This response overlooks the approach we have taken in deciding this case. Our aim is to craft a coherent and consistent means of applying abatement ab initio to restitution orders. As we have shown, the best explanation for abatement — the finality rationale— does not support a distinction between compensatory and punitive awards. Instead, it mandates that all vestiges of the criminal proceeding should disappear.
In contrast, the dissent skips the primary question of how abatement and restitution interact and assumes the continued existence of the compensatory-penal dichotomy. The dissent's citations to United States v. Bach, 172 F.3d 520 (7th Cir.1999), and United States v. Newman, 144 F.3d 531 (7th Cir.1998), suffer from the same problem. Both cases assume that restitution orders should be described as either compensatory or penal. Neither considers the overall purpose behind abatement ab initio and how such a purpose would affect all restitution orders. The traditional dichotomy cannot remain, however, if we are to craft a consistent regime that incorporates statutory elements — such as the Victim and Witness Protection Act — and two forms of equitable doctrine.

. The government argues, at length, that the instant restitution order was intended to make whole the victims of Parsons's fraud: "Unlike a fine, restitution does not deprive the estate of money the defendant may have rightfully acquired; instead it removes tainted money that defendant unlawfully obtained. ...” Examples of such uncompensated victims undoubtedly exist. In United States v. Logal, 106 F.3d 1547 (11th Cir.1997), the court abated a seemingly compensatory restitution order entered against a defendant convicted of numerous illegal financial dealings. Despite the time invested in the trial and the guilty verdict, those whom the decedent allegedly defrauded could not collect through the federal criminal courts.

. Merely because the criminal proceeding abates, however, does not necessarily mean that an individual who suffered a loss cannot obtain reimbursement in civil court. If he can meet the civil court’s lower burden of proof, he may receive a judgment from that court. The criminal court that entered the prior reimbursement order, however, should not retain any power over that prior defendant.
One may argue that allowing the estate to substitute[1] for the dead defendant ensures the fair representation of the decent's interests, but such a substitution does not align logically with the abatement of all prior criminal proceedings. Essentially, the substitution doctrine forces the estate to argue about a conviction that no longer exists and requires a court to adjudicate the merits of a proceeding that no longer took place. Although it is not without a cost, requiring victims to argue their case in civil court protects the interests of defendants whose direct appeals are not yet . final.

. Miss. Poultry Ass’n v. Madigan, 992 F.2d 1359, 1363 (5th Cir.), modified, 9 F.3d 1113 (5th Cir.), vacated on other grounds for reh'g en banc, 9 F.3d 1116 (5th Cir.1993), opinion on reh'g, 31 F.3d 293 (5th Cir.1994) (en banc)

. Admittedly, one could argue that "convicted” and "conviction” have different meanings. A defendant may be convicted on a given day and will always be convicted on that day. The conviction, in contrast, may abate or dissolve. This distinction, however, ignores the effect of abatement on either situation. After abatement, the defendant no longer stands convicted on that date, and no conviction exists.

. The dissent discusses, at length, the Mandatory Victim Restitution Act ("MVRA”). The parties, however, did not argue the MVRA in the context of this case. Instead, they generally focused on the equitable doctrines, how they interacted with one another, and how the VWPA affected that analysis. Even if we consider the MVRA, however, it references the same enforcement provision — 18 U.S.C. § 3664 — as does the VWPA. Consequently, using the MVRA as a means of keeping the compensatory-penal dichotomy fails, for the reasons we have discussed.

. Asset, 990 F.2d at 214 ("The rule of abatement has never been applied to require the return of money paid by a defendant prior to his death and has, in fact, been held inapplicable to fines — obviously penal — paid by a defendant before his death.”); see also United States v. Zizzo, 120 F.3d 1338, 1343 (7th Cir.1997) (stating that fines paid prior to death "are analogous to time served and are not refundable.”).

. The agreement has two requirements: "[I]n the event Defendant Parsons prevails in the final determination of this appeal, and no Final Judgment of Forfeiture is entered in this case, the [government] shall return to Defendant Parsons ... the entire amount of $970,826.90, plus interest.” The estate has satisfied the second requirement, as no final judgment has been entered. Thus, we address only whether Parsons "prevail[ed] in the final determination of this appeal.”

. We have no occasion here to comment on, and we express no opinion on, a situation in which there is no agreement or order, such as those present in this case, conditioning return of the forfeited sums on the outcome of the appeal.

. See, e.g., Asset, 990 F.2d at 214 ("The rule of abatement has never been applied to require the return of money paid by a defendant prior to his death....").

.This analysis pertains only to Parsons and this particular agreement. Other agreements may contemplate the possibility of the defendant’s death during the pendency of an appeal.

. The majority's unique "finality rationale,” even if valid, does not justify overruling Mma-hat and Asset. The majority's raison D’etre for creating the "finality rationale” is that "all consequences of the untested criminal conviction should abate,” Majority Op. at p. 411 (emphasis added), so that "neither the state nor affected parties should enjoy the fruits of an untested conviction." Id. at p. 414 (emphasis added). In Mmahat itself, however, this court has already created a procedure for testing the conviction of a defendant who dies during pendency of the appeal so that compensatory restitution consequences or fruits would not flow from an untested conviction. The Mmahat court held that the compensatory restitution order against the deceased defendant did not abate; instead, his heirs’ motion to substitute for him and continue the appeal in his place was granted, and his arguments which potentially could result in a reversal of the restitution order were fully considered. Mmahat, 106 F.3d at 93. Thus the majority has not shown a sufficient legal reason for overruling Mmahat and Asset because the perceived evil of an unreviewed and untested compensatory restitution order has been adequately remedied by Mmahat itself.
Mmahat and Asset also have already attained the "finality rationale’s” goal of eliminating the punitive effects of an unreviewed criminal conviction by assuring "that the state should not label one as guilty until he has exhausted his opportunity to appeal” Majority Op. at p. 413; preventing the "entering [of] an unreviewed judgment” Id. at p. 415; and “preventing a wrongly-accused defendant from standing convicted.” Id. at p. 415. Under Mmahat and Asset, the penal aspects of the judgment of conviction, which label or give the accused status as a "convicted criminal,” abate immediately upon the death of the defendant, and, as already noted, the heirs or estate of the deceased can pursue the appeal and take full advantage of the chance to have any judgment of compensatory restitution reviewed and reversed. Thus, the concrete objects and effects sought by the "finality rationale” are already accessible under Asset and Mmahat. There is no reason to create a new legalistic doctrine, and even if created it does not require overruling those Circuit precedents.
Contrary to the inference that might be drawn from a casual reading of the majority’s citations, the "finality rationale” is a completely novel judicial creation which has not been embraced or even suggested by the other courts. The majority cites United States v. Pauline, 625 F.2d 684, 685 (5th Cir.1980) and United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir.1977), See Majority Op. atp. 413, but they do not support or even mention that rationale. Pauline and Moehlenkamp merely hold that the Supreme Court’s decision in Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) to dismiss pending petitions for certiorari upon the petitioner’s death, overruling its previous practice of abatement followed in Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), was not meant to alter the longstanding rule of lower federal courts of abatement of the entire criminal proceedings upon death of an appellant during the pendency of his appeal. Pauline and Moehlenkamp dealt only with the abatement of the punitive aspects of criminal convictions; the question of whether compensatory restitution survives the appellant's death was not presented.
The majority was apparently inspired to create the "finality rationale” by a single law review article. Majority Op. at p. 413 (citing and quoting Rosanna Cavallaro, Better Off Dead: Abatement, Innocence, and the Evolving Right of Appeal, 73 U. Colo. L.Rev. 943, 954 (2002)). In her article, Ms. Cavallaro argues that the right to appeal from a criminal conviction should be and is evolving into a constitutional right. She sees the adoption of the remedy of abatement ab initio by a large majority of courts as an important "strand” which, together with others, "are forceful arguments for formal, legal recognition of an evolution in criminal procedure [toward con-stitutionalization of the right to appeal].” Id. 986. In furthering her argument for the constitutional right to appeal, she says that ”[t]he abatement remedy relies significantly on a larger premise: a conviction that cannot be tested by appellate review is both unreliable and illegitimate^]” Id. 954. It does not follow from this statement or the article as a whole that courts should create a "finality rationale” as espoused by the majority; nor does it follow that the dual mechanism provided by Asset and Mmahat, i.e., abatement ab initio of all punitive consequences of the criminal proceedings together with the right to *420 continue the appeal with respect to the compensatory restitution decree, does not adequately satisfy the needs for reliability and legitimacy in criminal proceedings.