**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

MICHAEL MARKS RICH, AKA
Richard Forbes Williams, AKA
Richard Morgan Forbes, AKA
Michael Richard Brown,
        *Defendant-Appellant.*

No. 08-30153

D.C. No.
6:05-cr-60140-HO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Argued and Submitted
October 5, 2009—Portland, Oregon

Filed May 3, 2010

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Charles Wolle,* Senior District Judge.

Opinion by Judge O'Scannlain

*The Honorable Charles Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

---

**COUNSEL**

Kevin W. Bons, Beckley Law Firm, P.C., Eugene, Oregon, argued the cause for the defendant-appellant. Kelly R. Beckley filed the briefs.

Kelly A. Zusman, Assistant United States Attorney, argued the cause for the plaintiff-appellee and was on the briefs. Sean B. Hoar, Assistant United States Attorney, filed the briefs. Karin J. Immergut, United States Attorney, Kent S. Robinson, Acting United States Attorney, and Robert Nesler, Assistant United States Attorney, also were on the briefs.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We consider whether the estate of a criminal defendant who dies pending appeal of his fraud conviction must continue to pay restitution to victims.

I

Michael Rich operated Pac Equities, a real estate investment firm. As president of the firm, he solicited investors with promises of high annual returns and low loan-to-value ratios, touting his prior successes. Unfortunately, Pac Equities was a Ponzi scheme. Over the course of several years, Rich and Pac Equities defrauded over 300 individuals of approximately $16

million. A grand jury charged Rich and co-defendant Pac Equities in a twenty-seven count superseding indictment with securities fraud, bank fraud, wire fraud, mail fraud, money laundering, obstruction of justice, and filing a false tax return.

After indictment, Rich violated his pre-trial release conditions by spending over $600,000, part of it in a Las Vegas casino. He subsequently agreed to the appointment of a temporary receiver both to preserve the assets held by or seized from the defendants and to distribute them to victims of his scheme. The magistrate judge, the government prosecutor, and the defense counsel all signed the temporary receivership stipulated order, dated March 14, 2006, over 18 months prior to the trial.

A few months later, the temporary receivership was converted to a permanent receivership through a permanent receivership stipulated order dated October 24, 2006 ("Receivership Order") signed by counsel for both parties and the magistrate judge. Subsequent to his permanent appointment, the receiver began recovering and disposing of property. By April 2, 2007, approximately seven months before Rich's trial, the receiver had returned nearly $3 million of seized assets to victims.

After a ten-day trial, a jury found Rich guilty of twenty-six of the twenty-seven counts of the superseding indictment.[1] It also returned special forfeiture verdicts finding that all the property described in the superseding indictment derived from the fraudulent scheme, and thus was forfeitable. Three months later, after the trial but before sentencing, the permanent receiver returned an additional $3 million to victims from the seized assets for a total of $5,818,009.55.

---

[1]The jury did not find Rich guilty of one of the obstruction of justice counts. The court later acquitted him of the other obstruction of justice count.

On May 7, 2008, the district judge sentenced Rich to a 236-month term of imprisonment.[2] It also ordered Rich to pay a special fee assessment of $2,400, or $100 for each count on which he was convicted. Most importantly for our purposes, the court ordered Rich and Pac Equities, jointly and severally, to pay restitution of over $10 million dollars ("Restitution Order"), the amount of the loss to investors remaining after deducting funds already returned to victims or held by the Receiver.

Rich timely appealed on May 9, 2008. But on June 2, 2008, before his appeal could be heard, Rich passed away. His counsel subsequently moved to abate and to dismiss the appeal and all criminal proceedings, which the government opposed. A motions panel of this court denied the motions "without prejudice to renewing the arguments in the merits briefs."

## II

### A

**[1]** Rich now challenges the denial of his motions to abate the conviction and all criminal proceedings. There is no doubt that "death pending appeal of a criminal conviction abates not only the appeal but all proceedings in the prosecution from its inception." *United States v. Oberlin*, 718 F.2d 894, 895 (9th Cir. 1983) (citing *Durham v. United States*, 401 U.S. 481 (1971) (per curiam)). This principle, called the rule of abatement *ab initio*, prevents, among other things, recovery against the estate of a fine imposed as part of the *conviction* and *sentence* and use of an abated conviction against the estate in related civil litigation. The rationale for abatement *ab initio* is that "the interests of justice ordinarily require that [the deceased] not stand convicted without resolution of the merits of his appeal." *Oberlin*, 718 F.2d at 896 (quoting *United*

---

[2]It sentenced co-defendant Ms. Rich to 51 months.

*States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977)). Thus, in our case, there is no doubt that Rich's conviction and any outstanding fines must be abated, and that his indictment must be dismissed.[3]

B

But, Rich also argues that the *Restitution Order* for $10 million should also be abated.[4] In Rich's view, abatement of the Order will not only eliminate requirements of future payments, but also will result in the return of all the property titled in his name that is currently in the possession of the receiver and of amounts previously returned to victims pursuant to the Restitution Order. The government strenuously objects, responding that the Restitution Order should not abate and that, even if it does, moneys the receiver currently possesses or has already disbursed should not be refunded.

As the foregoing suggests, the parties' contentions are muddied by the coexistence of a pre-conviction Receivership Order and a post-conviction Restitution Order. For example, Rich refers to moneys that already have been paid pursuant to the Restitution Order. But there are no such moneys. The only

---

[3]But fines already paid need not be refunded because they are the equivalent of time-served. *United States v. Zizzo*, 120 F.3d 1338, 1347 (7th Cir. 1997) (holding that a defendant who died during a pending appeal, but after paying a $50,000 fine and various other assessments, was not due the moneys because the payments "are analogous to time served and are not refundable") (citing Eleventh and Fifth Circuit cases); *United States v. Parsons, Estate of*, 367 F.3d 409, 417-18 (5th Cir. 2004) (en banc); *United States v. Logal*, 106 F.3d 1547 (11th Cir. 1997). Thus, the government need not refund any payments on the $2,400 special fee assessment.

[4]The government implies that Rich's attorneys cannot raise this argument without substitution of the estate, but substitution is not required. *Oberlin*, 718 F.2d at 894. Consequently, we use "Rich" to refer to "Rich" and "Rich's estate." Nor is the issue moot: the receiver has already disbursed funds, currently possesses funds, and may in the future possess more funds for distribution. All three categories of funds could be affected if the government were to prevail.

moneys that already have been paid to victims were those disbursed by the receivership, but those distributions occurred prior to the sentencing when there was no Restitution Order. Rich could not have paid moneys to victims pursuant to a Restitution Order that did not exist.

Because of this confusion, we must examine the nature of the interaction of the Receivership Order and the Restitution Order and then address the consequences of Rich's death upon each.

III

A

We focus on the Receivership Order, and not the temporary receivership stipulated order, because the permanent order remains operative. It does not differ in relevant part from the temporary order and both orders predate the conviction and Restitution Order.

The Receivership Order provided for appointment of a receiver to take from Rich the property he fraudulently obtained from investors and to restore it to them. The court found that "[g]ood cause exists to believe that [Rich] engaged in securities fraud [and other crimes], and that pursuant to [various laws], *the real and personal property referenced in this Order is forfeitable and should be restored to all persons who have suffered pecuniary harm as the result of such violations.*" Consequently, the court ordered that, as of May 30, 2006:

> Receiver shall hereafter be allowed to take possession and control of all assets that appear to be the proceeds of Defendant's fraudulent activity, subject to the claims by Defendant and/or Phyllis Rich that such assets are not proceeds of fraud, and to manage or dispose of such assets in order to restore such

property to persons who have suffered pecuniary harm as a result of unlawful business practices associated with Defendant.

Under that power, the receiver was authorized to "implement a claims handling and equitable distribution process to investors and creditors" and empowered "to sell or otherwise dispose of any real or personal property *without further order of this Court*."

The court also "retain[ed] jurisdiction over th[e] action for the purposes of implementing and carrying out the terms of all orders and decrees which may be entered herein." In particular, the Receivership Order empowered the receiver "to seek further instructions from this Court as to any matter pertaining to administration of the Receivership." The court also retained the power to adjudicate any claim by Rich that assets "discovered and/or seized" by the receivership "are not the proceeds of fraud." "If the claim cannot be resolved," the court ordered, "the Receiver shall bring the matter to the attention of the Court and the Court shall have jurisdiction to determine the Defendant's claim."

B

By contrast, the Restitution Order was created approximately two years later and accompanied the judgment of conviction, the sentence of imprisonment, and a special fee assessment. Specifically, the court ordered that Rich "shall pay full restitution, payable immediately in full, to the victims identified in the clerk's office." It specified that he "is to receive credit for the April 2, 2007 distribution from the Receiver to the victims in the amount of $2,818,009.55, as well as the March 6, 2008 distribution from the Receiver to the victims in the amount of $3,000,000." Consequently, it required that Rich "pay the remaining restitution, $10,362,689.81, joint and several with Phyllis Rich [and] Pac

Equities." The court waived interest on the amount because of the defendants' inability to pay such interest.

**[2]** The Restitution Order did not limit the source of payment to proceeds from Rich's crimes. This makes sense, as orders of restitution are generally not so restricted. Such practice explains why, when considering whether to order restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, courts consider the convicted defendant's "financial needs and earning ability." 18 U.S.C. § 3663(a)(1)(B)(i)(II). It also explains why a defendant is required to "notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay." *Id.* § 3664(k). Such changes may prompt the court to "require immediate payment in full," *id.*, in contrast to the original schedule, which depends in part on the defendant's "projected earnings and other income" at the time. *Id.* § 3664(f)(1)(B)(2)(B). If convicted defendants were not to pay restitution out of earnings, both provisions make little sense.

**[3]** Indeed, all of a convicted defendant's income and assets may be subject to restitution. For example, section 3664 provides that a "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, *including inheritance, settlement, or other judgment*, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." *Id.* § 3664(n). Thus, the Restitution Order differs from the Receivership Order in an important respect: the Restitution Order reaches assets that are not proceeds of fraud.

C

Thus, there is a fundamental distinction between funds at issue in this appeal. First, there are those funds that the receiver may reach, which, as stated in the Receivership Order, are "the proceeds of Defendant's fraudulent activity."

Nearly $9 million of such proceeds have already been obtained, of which $5.8 million have been distributed by the receiver; $3 million are still in the receiver's possession, waiting to be disbursed.[5] And then there are the funds of this type that the receiver may discover in the future, which may be subject to the defendant's claims.

Second, there are those funds that the receiver may not reach, which, as stated in the Receivership Order, "are not the proceeds of fraud." But such funds are not necessarily Rich's free and clear, for they are subject to the Restitution Order, which, of course, extends to all of Rich's assets and income, regardless of whether they arose from fraud. Examples of such funds would include inheritances, civil judgments, earnings, and, most importantly, other assets the receiver may discover which are "not the proceeds of fraud."[6]

## IV

**[4]** Which brings us to the question of what happens to the receivership, and the funds it reaches, upon the abatement of Rich's conviction because of his death pending appeal. The answer is simple: nothing. The receivership continues regardless of abatement of the conviction because the receivership was not dependent in any way on Rich's conviction. Nothing in the Receivership Order suggests it is extinguished by the Restitution Order, which, in turn, is silent on the point.

---

[5]We know that these funds survived defendant's claims because any defendant claims on these funds are time-barred pursuant to the Permanent Receivership Stipulated Order, which requires objection within 30 days of its filing or notice of the discovery of such assets.

[6]There is a live dispute over these unknown funds because a restitution order is a judgment against the estate for such funds, which constitutes an injury for the purposes of Article III standing. *E.g.*, *United States v. Christopher*, 273 F.3d 294, 297 (3d Cir. 2001) (exercising jurisdiction over estate's appeal of restitution order).

Nowhere in the document are the receiver's powers conditioned upon a criminal conviction or made reversible upon the failure of the prosecution to obtain a criminal conviction.[7] The separability of the requirement of repayment to victims and the conviction itself is confirmed by the fact that the receivership took possession of Rich's property, disposed of such property, and disbursed such property prior to Rich's conviction, and prior to his sentencing, without Rich's objection.

[5] The omission of a provision conditioning repayment to victims upon conviction starkly contrasts with arrangements described in other cases. In *United States v. Parsons, Estate of*, 367 F.3d 409, 418 n.22 (5th Cir. 2004) (en banc), for example, the Fifth Circuit considered an agreement providing that "[i]n the event [the defendant] prevails in the final determination of this appeal, and no Final Judgment of Forfeiture is entered in this case, the government shall return to [the defendant] the entire amount."[8] Here, Rich did not make such a reservation regarding the funds collected by the Receiver for repayment. He cannot now claim that his conviction was a predicate for such repayment, or claim that abatement of the conviction nullifies the requirement of repayment.

[6] In short, because of his stipulation to a permanent receivership, Rich cannot now, after death has abated his conviction, challenge the receiver's power to repay victims. On the contrary, Rich essentially has waived such objections by stipulating to the pre-trial appointment of the receiver. This means that Rich's death pending appeal has no effect on the receivership. The $5.8 million already disbursed, the $3 mil-

---

[7]The only reference to a subsequent criminal trial—at all—is a provision preventing the government from using the Receivership Order in its case-in-chief.

[8]It does not matter that in *Parsons* the agreement was described as a preliminary judgment of forfeiture. 367 F.3d at 418. The effect is the same as the appointment of a receiver: in both cases, the defendant's property is placed in the immediate control of the government.

lion waiting to be disbursed, and the as yet undiscovered proceeds of fraud cannot be refunded to Rich. The receivership remains as alive as on the day of its creation or the day of Rich's sentencing. And the district court retains jurisdiction, as it specified in the Receivership Order, to adjudicate any issues arising out of the receiver's collection and disbursement of funds, including any claims that newly discovered funds are "not the proceeds of fraud."

## V

But what about the funds which the receivership may not reach, but that are nonetheless covered by the Restitution Order?

**[7]** Whether a *restitution order* abates is a question that has divided the circuits. *Compare United States v. Christopher*, 273 F.3d 294, 297 (3d Cir. 2001) (holding restitution order is not abated); *United States v. Johnson*, 937 F.2d 609 (6th Cir. 1991) (unpublished per curiam) (same), *and United States v. Dudley*, 739 F.2d 175 (4th Cir. 1984) (same), *with Parsons*, 367 F.3d at 414-15 (holding restitution order is abated), *and United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997) (same). We have not yet addressed this question, despite our repeated affirmation of the *ab initio* principle. *Oberlin*, 718 F.2d at 894 (involving forfeiture); *United States v. Cloud*, 921 F.2d 225 (9th Cir. 1990) ("*Cloud II*") (involving a living convicted defendant's challenge to an order that his estate pay restitution after his death).

## A

Since restitution ordered in sentencing is a statutory remedy based on the VWPA and the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, we begin, as usual, with the text of those statutes. The VWPA provides:

The court, *when sentencing a defendant convicted of an offense under this title . . . may* order, in addition

to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. § 3663(a)(1)(A) (emphasis added).

The MVRA provides similarly:

Notwithstanding any other provision of law, *when sentencing a defendant convicted of an offense described in subsection (c)*, the court *shall* order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

*Id.* § 3663A(a)(1) (emphasis added).

**[8]** In providing that a court "may" or "shall" impose restitution "when sentencing a defendant convicted of an offense under this title, [etc.]," *id.* § 3663(a)(1), § 3663A(a)(1), the statutes require that the defendant first must be "convicted of an offense" so enumerated to support an order of restitution. In this case, such offenses are listed in section 3663A(c) because restitution was imposed pursuant to the MVRA. Abatement of the convictions for those offenses, thus, nullifies the accompanying restitution order. *See Parsons*, 367 F.3d at 416 (embracing this interpretation); *Logal*, 106 F.3d at 1552 (same).

1

The government contends that the passages also could be read narrowly that a conviction is merely a condition-

precedent to imposition of an order of restitution. *See Parsons*, 367 F.3d at 416 (recognizing this alternative reading); *id.* at 421 n.3 (Dennis, J., dissenting) (advancing the alternative reading). On this theory, abatement of the conviction would not nullify a restitution order, which instead stands on its own after it is imposed following conviction.

But such interpretation leads to an absurd result because of the statutory construction canon that words should be construed consistently throughout an entire statute. *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). Section 3664(l) provides that "[a] *conviction* of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim." 18 U.S.C. § 3664(l) (emphasis added). If we were to read this clause according to Rich's interpretation, then "an estate would be estopped from denying important factual matters in a subsequent civil suit, *even if the underlying conviction had been abated*." *Parsons*, 367 F.3d at 417 (emphasis in original). But that would be absurd. *Id.*

2

The common law doctrine of abatement *ab initio* confirms our interpretation of the statute. We interpret statutes to be consistent with established common law absent a clear indication to the contrary. *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 501 (1986). Significantly, a "fundamental principle of our jurisprudence from which the abatement principle is derived is that a criminal conviction is not final until resolution of the defendant's appeal as a matter of right." *Logal*, 106 F.3d at 1552 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956)). Otherwise, courts would have to choose among disregarding a finding of guilt, entering an unreviewed judgment, or adjudicating an imaginary appeal of a deceased defendant's conviction.

**[9]** The Restitution Order must be abated because "the defendant is no longer a wrongdoer" once his conviction has abated. *Parsons*, 367 F.3d at 416. Just as it is inappropriate to impose restitution on a living individual who was never indicted or convicted, so it is inappropriate to impose restitution on the estate of a deceased individual who, in the eyes of the law, was never indicted or convicted. Abatement *ab initio* means what it says.

B

The government raises two structural arguments despite such textual analysis.

1

The government first argues that the VWPA and MVRA foreclose the applicability of the abatement *ab initio* principle to a restitution order. The government observes that the *ab initio* principle traditionally has applied only to penal, not compensatory, remedies. It argues that a restitution order under the VWPA or MVRA is the equivalent of a civil judgment, such that it is heritable, assignable, and transformable into a lien. *See Parsons*, 367 F.3d at 420-22 (Dennis, J., dissenting). In this view, restitution is civil in nature, and thus compensatory; such orders should not be abated.

There are several problems with this argument. First, we have held repeatedly that "restitution payments have both compensatory and penal purposes." *Cloud II*, 921 F.2d at 226; *see United States v. Cloud*, 872 F.2d at 846, 854 (9th Cir. 1989) ("*Cloud I*") ("Criminal restitution [is] a means of achieving penal objectives such as deterrence, rehabilitation, or retribution."); *United States v. Keith*, 754 F.2d 1388, 1392 (9th Cir. 1985) ("Congress made restitution under the [Victim and Witness Protection] Act a criminal penalty."). Other circuits have held similarly. *Logal*, 106 F.3d at 1552 (ruling restitution is penal); *Christopher*, 273 F.3d at 299 (noting that

restitution is penal and compensatory). *But see United States v. Bach*, 172 F.3d 520, 522-23 (7th Cir. 1999). The government's argument fails first because restitution is not solely compensatory.

Second, and more importantly, the government's argument improperly assumes that the distinction between the compensatory and the penal is the sole rationale for the abatement *ab initio* doctrine. But that doctrine rests on the principle "that a criminal conviction is not final until resolution of the defendant's appeal as a matter of right." *Logal*, 106 F.3d at 1552 (adopting what it called the "finality principle"); *Parsons*, 367 F.3d at 414 (adopting the "finality principle" after extensive discussion). Indeed, death abates even the record of a criminal conviction, as opposed to merely its use in collateral proceedings, even though the former has no immediate penal effects. *Parsons*, 347 F.3d at 414.

Furthermore, we have had occasion to rely on the distinction between the compensatory and the penal in the abatement context. But, in those cases we typically drew broad distinctions between remedies in criminal proceedings and remedies in civil proceedings. Thus, in *Oberlin* we relied on the distinction between compensatory and penal remedies in a criminal forfeiture case, regarding which we were able to hold that "there is no doubt that it [the forfeiture] was essentially penal." 718 F.2d at 296. And in *Reiserer v. United States*, 479 F.3d 1160 (9th Cir. 2007), we relied on the distinction in a case involving tax actions, about which were able to hold that "[h]ere, it is clear that the legislature intended the penalties in question to be civil." *Id.* at 1162-63.

Restitution is not so obviously penal or compensatory. Rather, as we have recognized, it is both compensatory to the victim and penal to the defendant and the state. *Cloud*, 921 F.2d at 226 ("Classification of restitution payments as either penal or uncompensatory is dependent on the particular context in which this inquiry is conducted."). That explains why

we have expressly declined to apply the distinction between the penal and the compensatory to restitution abatement. *Id.* ("Thus our task is not to decide whether restitution payments under the VWPA are primarily penal or primarily compensatory."). We reaffirm that course today.

In the end, the government's argument contains two false premises. But even if it did not, at most it undermines our view that the *ab initio* principle informs the provisions of the VWPA and MVRA. But left remaining is the specific statutory text, which, of course, prevails over broad structural considerations. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524-26 (1989).

2

The government also argues that abating the Restitution Order frustrates the purposes of the VWPA and MVRA. In the government's view, those statutes are aimed at compensating the victims of crime. To abate restitution orders, consequently, gives the defendant's heirs a "windfall" at the expense of suffering victims. *Parsons*, 367 F.3d at 420 (Dennis, J., dissenting).

But, once again, abstract policy concerns cannot trump statutory text. Further, abatement does not necessarily benefit the heirs of the defendant at the expense of the defendant's victims. On the contrary, "nothing precludes the victims from bringing a separate civil action to prevent any improper benefit to [the defendant's] estate." *Logal,* 106 F.3d at 1552.

V

**[10]** For the foregoing reasons,[9] we **REMAND** to the dis-

---

[9]Rich also challenges his conviction on several other grounds, including the district court's grant of the motion for joinder of his trial with Pac Equities' trial one week before trial began, the district court's decision to

trict court with direction to **VACATE** the indictment, the judgment of conviction, the sentence, the special fee assessment, and the Restitution Order, but to **RETAIN JURISDIC-TION** over all matters relating to the Receivership Order.

---

allow the prosecution's hypothetical questions to investors about their reliance on Rich's misrepresentations, the district court's decision to admit the evidence regarding Rich's prior problematic real estate practice in Colorado, and the district court's failure to consider as a mitigating factor the disparity of sentences between his and Ms. Rich's sentences. Since Rich's conviction and Restitution Order are abated by his death, such issues are moot.