**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

   Plaintiff - Appellee,

v.

DANIEL DIRK CODDINGTON,

   Defendant - Appellant.

No. 18-1470
(D.C. No. 1:15-CR-00383-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

A jury convicted Daniel Dirk Coddington of wire fraud and securities fraud.

The district court sentenced him to 10 years in prison and ordered him to pay

$18,021,669.74 in restitution.  He died in prison shortly after he appealed.  His counsel

argues this court must, under the abatement ab initio doctrine, dismiss the appeal and

remand to the district court with instructions to vacate the judgment, including the

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

convictions and restitution order. Based on *United States v. Davis*, 953 F.2d 1482, 1486 (10th Cir. 1992), we agree.[1]

## I. LEGAL BACKGROUND

This circuit adopted the abatement ab initio doctrine in *United States v. Davis*, 953 F.2d 1482, 1486 (10th Cir. 1992). In *Davis*, the government prosecuted Mr. Davis and Mr. Burke for theft of federally insured deposits. *Id.* The jury convicted each of them on multiple counts, and both appealed. *Id.* Mr. Burke died pending appeal, and the government filed "a suggestion of death." *Id.* "[Mr.] Burke's counsel, on behalf of the family, opposed dismissal, seeking an appellate decision on the merits." *Id.*

In *Davis*, this court relied on the following statement from the Supreme Court to resolve this issue: "[D]eath pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception." *Durham v. United States*, 401 U.S. 481, 483 (1971) (per curiam). The *Davis* panel then said, "Accordingly, as to Burke, we shall dismiss his appeal and

---

[1] Given this disposition, we do not address Mr. Coddington's alternative challenges to the calculation of restitution, a jury instruction, and an evidentiary ruling during trial. Nor do we address the government's contention that Mr. Coddington's estate should be substituted as the Defendant - Appellant in this matter under Federal Rule of Appellate Procedure 43(a)(1).

2

remand the criminal judgment against him to the district court with instructions to vacate the judgment and dismiss the underlying indictment." 953 F.2d at 1486.[2]

In *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), the petitioners had paid restitution and then their convictions were reversed. The Supreme Court held the state must return the restitution funds to them. *Id.* at 1258. Based on *Nelson*, the Government concedes the restitution order against Mr. Coddington must be vacated if his convictions are vacated. *See* Aplee. Br. at 14.

## II. DISCUSSION

*Davis* requires us to "dismiss [Mr. Coddington's] appeal and remand the criminal judgment against him to the district court with instructions to vacate the judgment and dismiss the underlying indictment." 953 F.2d at 1486.

---

[2] We have followed *Davis* in unpublished cases. *See, e.g.*, *United States v. Brame*, 568 F. App'x 567, 567 (10th Cir. 2014) (unpublished) (dismissing the appeal as moot and remanding the case to district court with directions to vacate the judgment of conviction and dismiss the underlying indictment when defendant died pending direct review of a criminal appeal); *United States v. Fernandez*, 303 F. App'x 640, 640-41 (10th Cir. 2008) (unpublished) (same).

Our sister circuits have adopted the same doctrine. *See United States v. Volpendesto*, 755 F.3d 448, 452 (7th Cir. 2014) ("We and our sister circuits have recognized that death of a criminal defendant before appeal causes the case to become moot."); *United States v. Christopher*, 273 F.3d 294, 297 (3d Cir. 2001) (noting "the rule [is] followed almost unanimously by the Courts of Appeals" except for "one case . . . , but that view is based on an erroneous reading of that opinion"); *United States v. Estate of Parsons*, 367 F.3d 409, 413 n.7 (5th Cir. 2004) (en banc) (citing cases from Second, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits dismissing appeals under doctrine).

Although the Government points to "concerns underlying abatement ab initio," Aplee. Br. at 24, it does not ask us to discard the doctrine, *id.* at 34. Rather, it "merely ask[s] the Court to recognize a narrow exception to a general rule": "When there is a restitution order against the defendant, and the United States opposes abatement, the Court should allow the appeal to proceed." *Id.* But the Government's arguments to limit or distinguish *Davis* are not persuasive.

First, the Government argues the Supreme Court has "left 'the *scope* of . . . abatement to be determined by the lower federal courts,'" Aplee. Br. at 28 (quoting *Durham*, 401 U.S. at 882), but we did so in *Davis* as to abatement of the conviction. Second, it points out that no restitution order had been entered in *Davis*, *id.*, but it offers no authority holding a conviction accompanied by a restitution order should not be abated. Third, it notes the prosecution did not oppose abatement in *Davis*, *see id.* at 29, but we recognized in *Davis* that the deceased defendant's family opposed abatement.

Apart from its efforts to limit or distinguish *Davis*, the Government relies on 18 U.S.C. § 3613(b), which was enacted as part of the Justice for All Reauthorization Act of 2016. It provides:

> The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution. *In the event of the death of the person ordered to pay restitution, the individual's estate will be held responsible for any unpaid balance of the restitution amount . . . .*

4

18 U.S.C. § 3613(b) (emphasis added).

This reliance is misplaced. First, the estate's responsibility under the statute presupposes a conviction, but under *Davis*, Mr. Coddington's convictions must be vacated. Second, 18 U.S.C. § 3663A from the Mandatory Victims Restitution Act of 1996 provides that "when sentencing a defendant convicted of an offense . . . the court shall order . . . restitution," but again, Mr. Coddington's convictions must be vacated under *Davis*, obviating the statute's restitution requirement.

Although this circuit has not addressed what should happen to a restitution order when a conviction is vacated under the doctrine,[3] the Government, as noted above, has conceded based on *Nelson* that if Mr. Coddington's convictions must be vacated, the restitution order must be vacated as well. Aplee. Br. at 14; *see also id.*

---

[3] Before *Nelson*, four federal circuit courts abated criminal restitution orders under the abatement ab initio doctrine. *See United States v. Estate of Parsons*, 367 F.3d 409, 415 (5th Cir. 2004) (en banc); *United States v. Volpendesto*, 755 F.3d 448, 452 (7th Cir. 2014); *United States v. Rich*, 603 F.3d 722, 728-29 (9th Cir. 2010); *United States v. Koblan*, 478 F.3d 1324, 1325-26 (11th Cir. 2007). Three federal circuit courts did not abate a criminal restitution order under the abatement ab initio doctrine. *See* United States v. Christopher, 273 F.3d 294, 297 (3d Cir. 2001); *United States v. Johnson*, 937 F.2d 609, at *1 (6th Cir. 1991) (unpublished per curiam); *United States v. Dudley*, 739 F.2d 175, 178 (4th Cir. 1984).

In the only post-*Nelson* published circuit court decision, *United States v. Brooks*, 872 F.3d 78, 89 (2d Cir. 2017), the Second Circuit interpreted *Nelson* as requiring abatement of restitution following the death of a defendant pending a direct criminal appeal. *See also United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018) (unpublished) ("In light of *Nelson*, we can no longer say that an order of restitution is an exception to this rule; to the extent *Dudley* conflicts with *Nelson* in this regard, it is no longer good law.").

5

at 25 n.5.  We agree with this reading and application of *Nelson*.[4]  This concession

finds further support in the case law.  *See e.g.*, *United States v. Estate of Parsons*,

367 F.3d 409, 413 (5th Cir. 2004) (en banc) (quotations omitted) ("[T]he appeal does

not just disappear, and the case is not merely dismissed.  Instead, everything

associated with the case is extinguished, leaving the defendant as if he had never

been indicted or convicted.").

---

[4] In his reply brief, Mr. Coddington presents a new argument that the restitution issue is "moot" because he does not have any money and is now deceased so he "will not be buying any lottery tickets in the future."  Aplt. Reply Br. at 3-4 (citing *United States v. Wright*, 160 F. 3d 905, 909 (2d Cir. 1998) and *United States v. Pogue*, 19 F.3d 663, 665 (D.C. Cir. 1994) (per curiam)).  At the sentencing hearing, the district court was skeptical that a restitution order would compensate Mr. Coddington's victims because it seemed all that was left was "funny money."  ROA, Vol. IV at 132.  The prosecutor responded, "I suspect that's a reality."  *Id.*  And defense counsel said restitution would "[p]robably not" happen.  *Id.* at 106.  We note that Mr. Coddington was granted leave to proceed on appeal *in forma pauperis*.  The record, however, does not establish a complete absence of assets for restitution.  Mr. Coddington self-reported assets to the Probation Office that were listed in the PSR.

## III. CONCLUSION

Based on stare decisis and the Government's concession that the restitution order falls if the convictions fall, we dismiss this appeal and remand to the district court with instructions to vacate the judgment, which includes the convictions and the restitution order.[5]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[5] Legal commentators have criticized the abatement ab initio doctrine. *See, e.g.*, *Criminal Law—Due Process—Second Circuit Decision Highlights Harms of Abatement Doctrine—United States v. Brooks*, 872 F.3d 78 (2d Cir. 2017), 131 Harv. L. Rev. 1147 (2018); Patrick H. Gallagher, *The Aaron Hernandez Case: The Inconsistencies Plaguing the Application of the Abatement Doctrine*, 53 Gonz. L. Rev. 263 (2018). Some state courts have overruled and abandoned the doctrine. *See, e.g.*, *State v. Al Mutory*, 581 S.W.3d 741, 750 (Tenn. 2019); *Commonwealth v. Hernandez*, 118 N.E.3d 107, 110 (Mass. 2019); *State v. Benn*, 274 P.3d 47, 50 (Mont. 2012); *State v. Carlin*, 249 P.3d 752, 762-63 (Alaska 2011).

In this appeal, the Government presents policy arguments in favor of protecting the victims' interests in receiving restitution. Despite the foregoing, this panel cannot reconsider *Davis*. "Under the doctrine of stare decisis, this panel cannot overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000) (quotations omitted).