**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Markham G. DALY, Defendant–Appellant.**

**No. 10CA0580.**

Colorado Court of Appeals, Div. A.

June 9, 2011.

---

7.  All alleged procedural errors in granting summary judgment are therefore moot.

John W. Suthers, Attorney General, Catherine P. Adkisson, Deputy Solicitor General, Denver, Colorado, for Plaintiff–Appellee.

Springer and Steinberg, P.C., Harvey A. Steinberg, Ariel Z. Benjamin, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

We address here the applicability of the doctrine of abatement ab initio—abatement "from the beginning"—in a criminal case. This is a court-created common law doctrine, *see United States v. Estate of Parsons*, 367 F.3d 409, 414 (5th Cir.2004), which requires criminal convictions to be vacated and charges to be dismissed when defendants die while their cases are pending.

In this case, defendant was convicted at trial of a felony, and he died while his direct appeal was pending. Citing authority from other jurisdictions, the Attorney General asks us to abandon the doctrine of abatement ab initio. Relying on Colorado precedent, we decline this invitation, and we conclude that this case should eventually be remanded to the trial court to abate defendant's conviction.

However, because defendant was ordered to pay restitution to the victim of his crime at the sentencing hearing, this case presents an additional issue of first impression in Colorado: should the doctrine of abatement ab initio be applied when its effect would be to erase the civil judgment created by a restitution order? We hold that this civil judgment should not be abated.

### I. Background

Defendant, Markham G. Daly, was convicted of the class four felony of stalking on January 21, 2010. On March 8, 2010, the trial court sentenced him to serve a probationary sentence monitored by the intensive supervision program. The court also ordered him to pay restitution to the victim of his crime.

He filed his notice of appeal with this court on March 22, 2010. It stated that he intended to raise issues involving both his conviction and sentence.

On August 13, 2010, defendant's counsel filed a motion to dismiss this appeal. It stated that defendant had died on April 29, 2010, and a copy of his death certificate was attached.

We issued an order requiring the prosecution to show cause why, instead of dismissing the appeal, the case should not be remanded

to the trial court to set aside defendant's conviction and dismiss the charges against him. The prosecution replied that (1) the doctrine of abatement ab initio is not constitutionally required; (2) courts from some jurisdictions do not follow it; and (3) abating a conviction in a case, such as this one, in which the defendant has been ordered to pay restitution undermines the rights of crime victims.

In response, defendant's counsel argued that the doctrine of abatement ab initio should be applied to all of defendant's case because (1) the doctrine has a long pedigree in Colorado; (2) permitting defendant's conviction and sentence to stand would deny him his appellate rights; (3) the prosecution's reliance on authority from other jurisdictions was misplaced; and (4) the victim could pursue a separate civil case against defendant's estate to obtain redress for her financial losses.

## II.  Analysis

### A.  General Principles

#### 1.  Statutory Construction

When construing a statute, we first look to the statutory language. We give words and phrases their plain and ordinary meanings. We read the statute as a whole, and we interpret it in a manner that gives all its parts plain and sensible effect. We avoid absurd constructions. If the statute is unambiguous, we need look no further, and we do not need to employ other tools of statutory construction. *Seguna v. Maketa,* 181 P.3d 399, 401 (Colo.App.2008). Our primary goal is to determine and give effect to the legislature's intent. *Crandall v. City & County of Denver,* 238 P.3d 659, 662 (Colo.2010).

#### 2.  The Present Status of the Doctrine of Abatement in Colorado Criminal Cases

The doctrine of abatement ab initio was first recognized in Colorado in *Overland Cotton Mill Co. v. People,* 32 Colo. 263, 265, 75 P. 924, 925 (1904). There, after a defendant in a criminal case died while his conviction was pending appeal, our supreme court held that "the proceedings [against him] are abat-ed by operation of law." *Id.* This was so because

[t]he purpose of enforcing a penal statute is to punish the person found guilty of violating its provisions. The representatives of [the] deceased are not responsible for the alleged violation of the statute by him during his lifetime. They cannot be required to satisfy the judgment rendered against him. It is only the person adjudged guilty who can be punished, and a judgment cannot be enforced when the only subject-matter upon which it can operate has ceased to exist.

*Id.* In reaching this result, the supreme court cited several cases from other jurisdictions. At least one, *March v. State,* 5 Tex.App. 450, 1879 WL 7380, at *4 (1879), clearly endorsed the doctrine of abatement ab initio.

The supreme court followed *Overland* in *Crowley v. People,* 122 Colo. 466, 468, 223 P.2d 387, 387–88 (1950). The supreme court concluded that the defendant's death, "following the perfection of his appeal to the county court ... put an end to an infliction or enforcement of the punishment imposed." *Id.* at 468, 223 P.2d at 388.

*Crowley* leaned heavily on a federal case, *United States v. Mitchell,* 163 F. 1014, 1017 (C.C.D.Or.1908), *aff'd sub nom. United States v. Dunne,* 173 F. 254 (9th Cir.1909). *Crowley,* 122 Colo. at 468, 223 P.2d at 388. The court in *Mitchell* employed the doctrine of abatement ab initio, concluding that, when a defendant dies while his appeal is pending, "the entire cause is abated." *Id.* at 1017. The quotation employed by the supreme court in *Crowley* echoed this concept: "[B]y the death of [the defendant], the cause abated *entirely,* so that no enforcement of the payment of the fine imposed can be made out of his estate." *Crowley,* 122 Colo. at 468, 223 P.2d at 388 (quoting *Mitchell,* 163 F. at 1017).

In *People v. Lipira,* 621 P.2d 1389, 1390 (Colo.App.1980), a division of this court concluded that the term "abate," as used in *Overland,* means that a defendant's death renders the whole proceeding a nullity. This means that "there should be no determination of the issues on appeal and that the

judgment of conviction should be set aside and the indictment dismissed." *Id.* Because the division cited *Crowley* and *Mitchell,* we hold that this conclusion was a product of, and mandated by, *Crowley.*

*Lipira* was analyzed in *People v. Valdez,* 911 P.2d 703, 703–04 (Colo.App.1996). The division noted that appeals of right in criminal cases play an important role in the criminal justice system.

> [A]n appeal is an integral part of our system of adjudicating guilt or innocence and defendants who die before the conclusion of their appellate review have not obtained a final adjudication of guilt or innocence. Ordinarily, the interests of justice require that defendants not stand convicted without resolution of an appeal.

*Id.* at 704. Further, the division noted that, once a defendant dies, "the state's interest in protecting society has been satisfied and there is no further interest in punishing the wrongdoer." *Id.*

These justifications for the doctrine of abatement establish its boundaries. For example, if a defendant dies after a direct appeal has affirmed a conviction—for example while awaiting a decision on a petition for a writ of certiorari, or during an appeal of postconviction proceedings initiated under Crim. P. 35(c)—the conviction should not be abated. The "sole action that we take" in such circumstances is to dismiss the appeal as moot. *Id.* at 704. This is so because the defendant has already been afforded the protections of a direct appeal, and the interests of justice would not be served by abating the conviction. *Id.*

A division of this court further refined the parameters of the doctrine of abatement ab initio in *People v. Rickstrew,* 961 P.2d 1139, 1140–41 (Colo.App.1998). There, the division held that "when a criminal defendant dies during the pendency of an appeal directed only at a sentence entered after a guilty plea, abatement of the underlying conviction is not warranted." *Id.* at 1141. The rationale underlying this conclusion was that, once a defendant pleads guilty, the presumption of innocence disappears, and the issue of the defendant's guilt no longer needs to be re-

solved. In such cases, the proper remedy is to dismiss the appeal.

According to *Surland v. State,* 392 Md. 17, 19–20, 895 A.2d 1034, 1035–36 (2006), the doctrine of abatement ab initio is applied in several ways by appellate courts across the country. *See also* Tim A. Thomas, Annotation, *Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction—Modern Cases,* 80 A.L.R.4th 189 (1990); John H. Derrick, Annotation, *Abatement Effects of Accused's Death Before Appellate Review of Federal Criminal Conviction,* 80 A.L.R. Fed. 446 (1986). Generally, a majority of appellate courts, including Colorado and federal circuit courts, dismisses the appeal as moot and orders that the entire criminal conviction be abated.

No Colorado appellate court has decided whether a civil judgment created by a restitution order should be abated ab initio. We turn next to that issue, recognizing that we write on a clean slate.

### 3. The Effect of Abatement Ab Initio on Restitution Orders

■ We begin this portion of the analysis by observing that restitution is not the equivalent of a fine. "A fine is solely a monetary penalty, while restitution serves to make the victim whole." *People v. Stafford,* 93 P.3d 572, 574 (Colo.App.2004); *see also People v. Cardenas,* 262 P.3d 913, 914 (Colo.App.2011). A fine is paid to the government; restitution is paid to the victim. *See State v. DeAngelis,* 329 N.J.Super. 178, 190, 747 A.2d 289, 296 (2000). Therefore, *Overland* and *Crowley* do not resolve the issue whether civil judgments created by restitution orders should be abated ab initio.

Courts that have specifically addressed this question have reached different results. For example, there is a split among the federal circuits. *See United States v. Rich,* 603 F.3d 722, 728 (9th Cir.2010) (Third, Fourth, and Sixth Circuits hold that restitution order is not abated; Fifth, Ninth, and Eleventh Circuits hold that it is abated).

One rationale supporting the conclusion that a restitution order should not be abated

is found in *United States v. Christopher*, 273 F.3d 294, 299 (3d Cir.2001):

> [R]estitution in this case is more compensatory in nature than penal. Historically, restitution, an equitable remedy, was intended to reimburse a person wronged by the actions of another. To absolve the estate from refunding the fruits of the wrongdoing would grant an undeserved windfall. We are persuaded that abatement should not apply to the order of restitution in this case, and thus, it survives against the estate of the deceased [defendant].

Based on this analysis, the court in *Christopher* ordered the parties to address the merits of the restitution order on appeal. *Id.*

Several state appellate courts have held that restitution orders should not be abated. *In re Estate of Vigliotto*, 178 Ariz. 67, 69–70, 870 P.2d 1163, 1165–66 (Ariz.Ct.App.1993); *State v. Korsen*, 141 Idaho 445, 450, 111 P.3d 130, 135 (2005)("[B]y virtue of the substantial changes brought about by ... particularly the victims' rights provisions, we hold that a criminal conviction and any attendant order requiring payment of ... restitution ... are not abated, but remain intact...."); *People v. Peters*, 449 Mich. 515, 522, 537 N.W.2d 160, 164 (1995) (restitution order may be enforced notwithstanding the defendant's death); *State v. Christensen*, 866 P.2d 533, 535 (Utah 1993) (restitution orders that become civil judgments under restitution statutes are not abated); *State v. Devin*, 158 Wash.2d 157, 142 P.3d 599 (2006) (overruling precedent requiring abatement ab initio, and concluding, in part, that restitution orders to victims should not be abated).

### 4. Rights of Victims of Crimes

The doctrine of abatement ab initio has recently generated criticism aimed at how its application undermines the rights of victims to obtain restitution. *See* Timothy A. Razel, Note, *Dying to Get Away with It: How the Abatement Doctrine Thwarts Justice—and What Should Be Done Instead*, 75 Fordham L.Rev. 2193 (Mar. 2007); Tim E. Staggs, Note, *Legacy of a Scandal: How John Geoghan's Death May Serve as an Impetus to Bring Abatement Ab Initio in Line with the Victims' Rights Movement*, 38 Ind. L.Rev. 507 (2005).

Colorado's early applications of the doctrine of abatement ab initio in criminal cases preceded any constitutional or statutory recognition of victims' rights. Colorado's Constitution was amended, effective January 14, 1993, to provide crime victims with the right to be heard in certain circumstances. Colo. Const. art. II, § 16a. In addition, the legislature adopted statutes providing additional rights to crime victims that became effective at the same time. Ch. 77, secs. 3 & 9, § 24–4.1–302.5, 1992 Colo. Sess. Laws 418–21 (effective upon governor's proclamation of voters' approval of constitutional amendment).

■ Crime victims do not have a constitutional right to receive restitution from the defendants who have victimized them. Rather, they have a statutory right. § 24–4.1–302.5(1)(h), C.R.S.2010 (victims have the right "to have the court determine the amount, if any, of restitution to be paid to a victim ... by any person convicted of a crime against such victim for the actual pecuniary damages that resulted from the commission of the crime").

The General Assembly has declared that requiring defendants to pay victims restitution serves important public purposes. § 18–1.3–601(1)(a)–(e), C.R.S.2010. Thus the General Assembly has (1) recognized that victims "endure undue suffering and hardship" caused by crime; (2) declared that defendants who cause such damage "should be under a moral and legal obligation" to make restitution to those they have harmed; (3) observed that requiring defendants to pay restitution assists in their rehabilitation; (4) stated that restitution serves as a deterrent to future crimes; and (5) connected the effectiveness of the criminal justice system with timely restitution, because timely restitution lessens the financial onus that crime places on victims, compensates them for their suffering, and preserves their dignity. *Id.*

The legislature declared that the restitution statute must be liberally construed to further these goals. § 18–1.3–601(2), C.R.S. 2010.

Restitution orders have a compensatory aspect. *See People v. Estes,* 923 P.2d 358, 360 (Colo.App.1996). However, divisions of this court have held that, despite their compensatory component, such orders are considered to be punitive in nature because they further the rehabilitative and punitive goals of sentencing. *E.g., People v. Harman,* 97 P.3d 290, 293 (Colo.App.2004) ("An order increasing the amount of restitution has the effect of increasing the punishment originally imposed."); *People v. Howell,* 64 P.3d 894, 900 (Colo.App.2002); *People v. Rogers,* 20 P.3d 1238, 1239 (Colo.App.2000); *People v. Shepard,* 989 P.2d 183, 187 (Colo.App. 1999)("[A]n order of restitution, as a part of the criminal sentence, may be considered punitive in nature.").

With exceptions that are not pertinent here, every criminal conviction must be accompanied by an order requiring the defendant to pay restitution, which is defined to include the pecuniary losses suffered by victims. § 18–1.3–602(3)(a), C.R.S.2010 (definition of "restitution"); § 18–1.3–603(1), C.R.S. 2010 (assessment of restitution). A restitution order creates "a final civil judgment in favor of the state and any victim," which, "[n]otwithstanding any other civil or criminal statute or rule," shall "remain in force until the restitution is paid in full." § 18–1.3–603(4)(a), C.R.S.2010. The restitution order also creates a lien against the defendant's personal property, § 18–1.3–603(4)(c), C.R.S. 2010, and is to be considered a debt that qualifies as an exception to discharge in bankruptcy, § 18–1.3–603(4)(d), C.R.S.2010.

### B. Application of General Principles

■ We are bound by the supreme court's holdings in *Overland* and *Crowley. See People v. Smith,* 183 P.3d 726, 729 (Colo.App. 2008). The reasoning in *Lipira, Valdez,* and *Rickstrew* is consistent with the reasoning in those supreme court cases, and so we are persuaded to apply it here. Therefore, we conclude that defendant's criminal conviction should be abated ab initio because he died before his direct appeal was resolved.

Abating defendant's conviction ab initio furthers important policies described in *Lipira* and its progeny. First, defendant's death

removes society's ability to punish him, and society no longer requires protection from him. *See Overland,* 32 Colo. at 265, 75 P. at 925.

Second, although defendant did not have a constitutional right to appeal from his criminal conviction, *Jones v. Barnes,* 463 U.S. 745, 750–51, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *People v. Rivera–Bottzeck,* 119 P.3d 546, 551 (Colo.App.2004), he had a statutory right to appeal, § 16–12–101, C.R.S.2010. Thus, defendant had the right to bring his conviction to us to determine whether it should be overturned. Without that determination, his adjudication of guilt is not final. *See Valdez,* 911 P.2d at 704.

■ However, we reach a different result concerning the issue whether the civil judgment created by the restitution order entered at defendant's sentencing should be abated ab initio. Well after *Overland, Crowley,* and *Lipira* were decided, our legislature made clear that restitution serves an important function in the criminal justice system by including it in victims' rights legislation. In the course of providing victims with the statutory right to receive restitution, it expanded the right beyond a simple sentencing condition by mandating that restitution orders create final civil judgments. § 18–1.3–603(4)(a). These judgments remain in effect until restitution is fully collected "[n]otwithstanding any other civil or criminal statute or rule." *Id.* They function as liens against the defendant's personal property, and they cannot be discharged in bankruptcy. § 18–1.3–603(4)(c)–(d).

The plain language of these statutes leads us to the following conclusions. First, the legislature saw civil judgments created by § 18–1.3–603(4)(a) as an important part of guaranteeing victims' rights.

Second, these statutorily created civil judgments are designed, in part, to save victims the time and expense necessary to file separate civil cases to collect their restitution awards. *See Roberts v. People,* 130 P.3d 1005, 1010 (Colo.2006).

Third, the General Assembly made these civil judgments robust and durable: they

cannot be erased by criminal or civil statutes or rules.

Fourth, this durability indicates that the legislature intended to place a high priority on such civil judgments being satisfied.

Fifth, the statutory emphasis preserving these civil judgments until they are satisfied persuades us that they are designed to survive a defendant's death.

Sixth, the legislature understood that these civil judgments would survive a defendant's death because the legislature was presumed to be aware of its prior enactments when it passed the victims' rights legislation. *See People v. Santisteven,* 868 P.2d 415, 418 (Colo.App.1993). Thus, we presume that the legislature was aware of section 13–58–101, C.R.S.2010, which indicates that civil judgments survive the deaths of judgment debtors:

> When a judgment is obtained in any court of record in this state against any person who after the rendition of said judgment dies, a claim based upon such judgment may be filed against the estate of the deceased judgment debtor without first reviving the judgment against his heirs or personal representatives.

This statute has been in effect, in substantially the same form, since at least 1883. Gen. Stat. 1883 § 1871, at 603. Similarly, judgment liens that attach to property while parties to lawsuits are alive survive their deaths. *Willis v. Neilson,* 32 Colo.App. 129, 132, 507 P.2d 1106, 1108 (1973).

Seventh, because these civil judgments are designed to survive a defendant's death, they should not be abated ab initio, even though the doctrine of abatement ab initio is a product of common law, and not a civil or criminal rule or statute. Indeed, the common law, as represented by *Overland, Crowley, Lipira, Valdez,* and *Rickstrew,* did not address this issue, nor even mention it, leaving an empty space adjacent to the common law rule that this opinion occupies for the first time.

Eighth, the seventh conclusion is consistent with the legislature's express direction in section 18–1.3–601(2) that the restitution statute be construed liberally to accomplish its purposes. One of these purposes is to make timely restitution to victims "to compensate them for their suffering and hardship" and to preserve their dignity. *See* § 18–1.3–601(1)(e).

Further, the result we reach here is not unprecedented. Courts from other jurisdictions have also relied on similar components of comparatively recent victims' rights statutes to conclude that the doctrine of abatement ab initio should not apply to restitution orders. *See, e.g., Vigliotto,* 178 Ariz. at 69–70, 870 P.2d at 1165–66; *Korsen,* 141 Idaho at 450, 111 P.3d at 135; *Peters,* 449 Mich. at 522, 537 N.W.2d at 164; *Christensen,* 866 P.2d at 535; *but see, e.g., Rich,* 603 F.3d at 728–30. Some courts have also abated convictions while allowing restitution orders to stand. *See Christopher,* 273 F.3d at 299; *United States v. Dudley,* 739 F.2d 175, 178 (4th Cir.1984); *Vigliotto,* 178 Ariz. at 69–70, 870 P.2d at 1165–66; *Peters,* 449 Mich. at 522, 537 N.W.2d at 164.

Moreover, as *Valdez* and *Rickstrew* point out, the doctrine of abatement ab initio is not triggered when its underlying policies are not implicated. Here, those policies are not implicated, and we hold that the doctrine is thus not triggered. This is so because we have concluded that, in section 18–1.3–603(4)(a), the legislature created a civil judgment intended to survive a defendant's death. *See also Dudley,* 739 F.2d at 177 ("It is an old and respected doctrine of the common law that a rule ceases to apply when the reason for it dissipates.").

Last, "[w]e also note that a criminal conviction establishing the defendant's culpability is not required to impose restitution." *People v. Pagan,* 165 P.3d 724, 731 (Colo. App.2006). Although a restitution order can only be entered to compensate a victim for losses caused by a defendant's criminal conduct after a defendant has been convicted of a crime, a restitution order may properly include losses a victim incurred resulting from a defendant's uncharged acts. *Estes,* 923 P.2d at 360. Here, the record indicates that defendant was charged with having committed a criminal act, and the restitution order was eventually entered as a result of it. Indeed, when the civil judgment here was created, there was a criminal conviction, and

the court had issued a restitution order based on that conviction.

## C. Conclusion

We conclude that the doctrine of abatement ab initio applies to criminal convictions in the circumstances described by *Lipira, Valdez,* and *Rickstrew.* This is one of those circumstances.

However, we further conclude that the doctrine does not apply to civil judgments created by restitution orders, such as the one here. We also hold that, in order to vindicate his statutory right to an appeal, defendant's estate is entitled to challenge the restitution order that forms the basis for the civil judgment. *See Christopher,* 273 F.3d at 299.

We order defendant's present appellate counsel to notify defendant's personal representative of this appeal within ten days of this order. The personal representative will then have ten days to inform this court in writing whether he or she wishes to be substituted as a party by filing a motion under C.A.R. 43(a), and whether he or she wishes to proceed with this appeal.

If defendant has no personal representative, defendant's present counsel will so inform this court within ten days of this order, and we will then appoint present counsel to represent defendant's estate for the purposes of this appeal. *See* C.A.R. 43(a); *State v. Salazar,* 123 N.M. 778, 785–86, 945 P.2d 996, 1003–04 (1997). Counsel will inform this court at the same time whether he or she wishes to pursue an appeal in this case.

The only issues to be considered in this appeal will be those that address the merits of the restitution order that created the civil judgment, including any issues arising out of the conviction that bear directly on that order. *See, e.g.,* § 18–1.3–602(3)(a), (4), C.R.S. 2010 (definitions of "restitution" and "victim"); *People v. Bowerman,* 258 P.3d 314, 316 (Colo.App.2010) (listing examples of cases in which restitution orders constituted illegal sentences); *People v. Steinbeck,* 186 P.3d 54, 60 (Colo.App.2007) ("The [restitution] statute only requires that the conduct underlying the basis of the defendant's crimi-

nal conviction proximately caused the victim's losses."); *see also Christopher,* 273 F.3d at 299 (conviction abated, but appeal proceeds "addressing the merits of the restitution order"); *Christensen,* 866 P.2d at 537 ("The case is remanded to the court of appeals to hear defendant's appeal on its merits insofar as it bears on the restitution order.").

If the decision is made to proceed with this appeal, the briefing schedule will be governed by C.A.R. 31(a). The opening brief will be due within forty days after the date on which the court is notified that the appeal will proceed.

If we affirm the restitution order, or if the appeal of that issue is withdrawn, the civil judgment created by the restitution order will remain in full force and effect. The case will be remanded to the trial court with directions to abate the criminal conviction, to dismiss the charges against defendant, but to leave this case open for the sole purpose of enforcing the civil judgment created by the restitution order. If we reverse the restitution order, the case will be remanded with appropriate directions.

We grant defendant's motion to dismiss the appeal as far as defendant's conviction is concerned. We deny the motion to dismiss as far as the civil judgment created by the restitution order is concerned, and the appeal concerning the civil judgment shall proceed as described in this opinion.

Judge ROMÁN concurs.

Judge FURMAN specially concurs.

Judge FURMAN specially concurring.

I agree the restitution order creates "a final civil judgment in favor of the state and any victim," which shall "remain in force until the restitution order is paid in full." § 18–1.3–603(4)(a), C.R.S.2010. I write separately only to emphasize that the application of abatement ab initio leads to a paradoxical result in which defendant's criminal conviction is both vacated in its entirety and used as the basis for a final civil judgment.

The doctrine of abatement ab initio, which has been applied when a criminal defendant dies while an appeal of a conviction is pend-

ing, operates to extinguish ab initio all criminal proceedings initiated against the defendant. As a result, the appeal is dismissed, the underlying conviction is vacated, and the indictment or information is dismissed. *See People v. Lipira,* 621 P.2d 1389 (Colo.App. 1980). Our supreme court adopted this common law doctrine in the early *Overland Cotton Mill Co. v. People,* 32 Colo. 263, 75 P. 924 (1904), and *Crowley v. People,* 122 Colo. 466, 223 P.2d 387 (1950), cases. It is important to recognize, however, that the legal landscape has changed significantly since that time.

The supreme court, both in *Overland Cotton* and in *Crowley,* applied abatement ab initio based solely on its reasoning that "[i]t is only the person adjudged guilty who can be punished, and a judgment cannot be enforced when the only subject-matter upon which it can operate has ceased to exist." *Overland Cotton,* 32 Colo. at 265, 75 P. at 925. The supreme court's concern was to protect the interests of parties related financially to a criminal defendant, such as his heirs. The court thus sought to prevent these related parties from being subject to criminal penalties due only to their relationship to the criminal defendant because "[t]he purpose of enforcing a penal statute is to punish the person found guilty of violating its provisions." *Id.*

As the majority points out, however, the legislature has significantly altered the interests involved in a criminal conviction by enacting provisions for restitution of crime victims. Restitution, in the form of a civil judgment, creates an interest in the conviction beyond that of punishment. The victim now has an interest in being made whole through the repayment of losses resulting from the criminal act. *See* § 18–1.3–603, C.R.S.2010.

Although the majority relies on the due process reasoning in *People v. Valdez,* 911 P.2d 703 (Colo.App.1996), and *People v. Rickstrew,* 961 P.2d 1139 (Colo.App.1998), in applying abatement ab initio, I think it important to recognize that due process for the deceased defendant was not a concern of the supreme court in either *Overland Cotton* or *Crowley.* On the contrary, the only due process concerns shown by the supreme court were for those individuals related financially to the criminal defendant who may be punished as a result of the defendant's criminal conviction. I see no basis in *Overland Cotton* or *Crowley* on which to afford deceased criminal defendants due process rights.

Further, citing *People v. Pagan,* 165 P.3d 724, 731 (Colo.App.2006), the majority states that "a criminal conviction establishing the defendant's culpability is not required to impose restitution." The *Pagan* division, however, addressed a situation in which, after the defendant was convicted of certain offenses, a sentencing court imposed restitution based partly on other offenses of which the defendant was acquitted. This is different from the case at hand in which the conviction is abated from the beginning and an order of restitution alone is sustained without any underlying criminal conviction.

I therefore concur in the judgment.