The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 20, 2020

## 2020COA124

**No. 17CA0822, *People v. Johnson* — Criminal Law — Sentencing — Restitution — Abatement *Ab Initio*; Constitutional Law — Due Process**

In light of *Nelson v. Colorado*, 581 U.S. \_\_\_, \_\_\_, 137 S. Ct. 1249, 1257-58 (2017), and *People v. Cowen*, 2018 CO 96, a division of the court of appeals revisits the holding in *People v. Daly*, 313 P.3d 571, 578 (Colo. App. 2011), that the doctrine of abatement *ab initio* does not apply to restitution orders.  The division concludes that when a defendant dies while his direct appeal is pending, as in this case, the doctrine of abatement *ab initio* extinguishes everything associated with the case — including the restitution order — and leaves the defendant as if he had never been indicted or convicted.

Accordingly, the division remands the case to the district court with instructions to abate the defendant's criminal conviction; dismiss the charges against him; vacate any orders concerning costs, fees, and fines; and vacate the restitution order.

COLORADO COURT OF APPEALS                                    **2020COA124**

Court of Appeals No. 17CA0822
Logan County District Court No. 15CR306
Honorable Charles M. Hobbs, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eddie Wayne Johnson,

Defendant-Appellant.

MOTION GRANTED

Division A
Opinion by JUDGE YUN
Román and Tow, JJ., concur

Announced August 20, 2020

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Chelsea E. Mowrer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Eddie Wayne Johnson was convicted of multiple counts of securities fraud and theft and adjudicated a habitual criminal. The district court sentenced him to a total of forty-eight years in prison and ordered him to pay approximately $220,000 in costs, fees, and restitution. Johnson timely appealed. Before the appeal could be resolved, however, Johnson died.

¶ 2    Johnson's counsel filed a motion notifying this court of Johnson's death and requesting the abatement *ab initio* of all the proceedings against him, including his convictions and the restitution order. The People object. They concede that the "penal aspects" of the judgment of conviction (i.e., Johnson's sentence and "non-restitution fees, fines, or costs") should be abated. But they argue that, under *People v. Daly*, 313 P.3d 571, 578 (Colo. App. 2011), and section 18-1.3-603, C.R.S. 2019, the restitution order should not be abated because it is a civil judgment that survives Johnson's death.

¶ 3    *Daly* was decided in 2011. Subsequent legal authority from this and other jurisdictions requires us to reexamine the scope of the doctrine of abatement *ab initio*. We now hold that, when a defendant dies while his criminal conviction is pending on direct

appeal, the doctrine of abatement *ab initio* extinguishes a restitution order entered as part of his sentence. We therefore agree with Johnson's counsel that the order of restitution must be abated.

##### I. Abatement *Ab Initio* Extends to Restitution Orders

¶ 4 For over a century, Colorado has recognized the common law doctrine of abatement *ab initio*. *See Overland Cotton Mill v. People*, 32 Colo. 263, 265, 75 P. 924, 925 (1904). Under this doctrine, when a defendant dies while his criminal conviction is pending on direct appeal, his death "abates not only the appeal but also all proceedings had in the prosecution from its inception." *People v. Griffin*, 2014 CO 48, ¶ 4 (quoting *Crooker v. United States*, 325 F.2d 318, 320 (8th Cir. 1963)). "[T]he appeal does not just disappear, and the case is not merely dismissed. Instead, everything associated with the case is extinguished, leaving the defendant as if he had never been indicted or convicted." *Id.* (quoting *United States v. Estate of Parsons*, 367 F.3d 409, 413 (5th Cir. 2004)).

¶ 5 The doctrine of abatement *ab initio* rests on two principles. *Id.* at ¶ 5. The first is finality: "an appeal is an integral part of our system of adjudicating guilt or innocence and defendants who die

before the conclusion of their appellate review have not obtained a final adjudication of guilt or innocence." *Id.* (quoting *People v. Valdez,* 911 P.2d 703, 704 (Colo. App. 1996)).  The second is punishment: the primary purpose of the criminal justice system is to punish offenders, and a defendant's death "renders enforcement of the punishment impossible." *Id.* at ¶ 6.

¶ 6     Colorado precedent applying the doctrine of abatement *ab initio* makes clear that, when a defendant dies during the pendency of his direct appeal, his conviction and sentence, including fines, must be vacated and the indictment dismissed.  *See, e.g., Crowley v. People,* 122 Colo. 466, 467-68, 223 P.2d 387, 388 (1950) (ordering an end to "the punishment imposed by the justice of the peace," which included a fine); *People v. Lipira,* 621 P.2d 1389, 1390 (Colo. App. 1980) (directing the district court "to set aside the judgment of conviction and dismiss the indictment").  It is less clear, however, whether the defendant's death abates a restitution order.

¶ 7     A division of this court addressed that question in *Daly,* 313 P.3d at 578, ultimately concluding that the doctrine of abatement *ab initio* "does not apply to civil judgments created by

3

restitution orders."  The division reached this conclusion based, in large part, on its interpretation of section 18-1.3-603(4)(a)(I), which states that a restitution order is "a final civil judgment in favor of the state and any victim" that "remains in force until the restitution is paid in full," "[n]otwithstanding any other civil or criminal statute or rule."  *See Daly*, 313 P.3d at 576-77.  According to the *Daly* division, the legislature intended this statute to create a civil judgment that survives a defendant's death and to which the doctrine of abatement *ab initio* does not apply.  *Id.* at 578.  Subsequent decisions, in our view, have called this reasoning into question.

¶ 8     In *Nelson v. Colorado*, 581 U.S. ___, ___, 137 S. Ct. 1249, 1257-58 (2017), the defendants, both of whom had their convictions reversed on appeal, challenged the constitutionality of Colorado's Compensation for Certain Exonerated Persons Act, §§ 13-65-101 to -103, C.R.S. 2019, under which "a defendant must prove her innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to an invalid conviction."  *Nelson*, 581 U.S. at ___, 137 S. Ct. at 1255.  Applying the procedural due process test from *Mathews v. Eldridge*, 424 U.S. 319

4

(1976), the United States Supreme Court held that, "[w]hen a criminal conviction is invalidated by a reviewing court and no retrial will occur, the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant[s] upon, and as a consequence of, the conviction." *Nelson*, 581 U.S. at \_\_\_, 137 S. Ct. at 1252. Once the convictions have been "erased" and the defendants' presumption of innocence "restored," the Court explained, "Colorado has no interest in withholding from [them] money to which the State currently has zero claim of right." *Id.* at \_\_\_, \_\_\_, 137 S. Ct. at 1255, 1257. In other words, "Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Id.* at \_\_\_, 137 S. Ct. at 1256.

¶ 9     The Colorado Supreme Court "[e]xtend[ed] the teachings of *Nelson*" in *People v. Cowen*, 2018 CO 96, ¶ 36. There, the Court held that procedural due process prohibits ordering restitution "for losses resulting from conduct of which a defendant has been acquitted and as to which he retains the presumption of innocence." *Id.* at ¶ 38. A year later, a division of the court of appeals took this reasoning a step further, concluding that, to

5

comport with due process, absent a specific plea agreement in which the defendant agrees to pay restitution arising out of uncharged or dismissed counts, courts may not order restitution for losses caused by conduct for which the defendant has never been charged or for losses caused by conduct underlying a dismissed charge. *People v. Sosa*, 2019 COA 182, ¶¶ 26-29.

¶ 10    The federal circuit courts, meanwhile, are split on whether the doctrine of abatement *ab initio* applies to restitution orders. The Third and Sixth Circuits have limited the doctrine of abatement *ab initio* to the appeal, the conviction, and any fines, allowing restitution orders to remain in effect even when the defendant dies during the pendency of his direct appeal. *See United States v. Christopher*, 273 F.3d 294, 299 (3d Cir. 2001); *United States v. Johnson*, 937 F.2d 609 (6th Cir. 1991) (unpublished table decision). As the Third Circuit explained, restitution is "an equitable remedy . . . intended to reimburse a person wronged by the actions of another," and "[t]o absolve the estate from refunding the fruits of the wrongdoing would grant an undeserved windfall" to the defendant. *Christopher*, 273 F.3d at 299.

¶ 11    But the majority of federal circuit courts have held that the doctrine of abatement *ab initio* applies to restitution orders. *See United States v. Coddington*, 802 F. App'x 373, 375-76 (10th Cir. 2020); *United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018); *United States v. Brooks*, 872 F.3d 78, 89 (2d Cir. 2017); *United States v. Volpendesto*, 755 F.3d 448, 454 (7th Cir. 2014); *United States v. Rich*, 603 F.3d 722, 729 (9th Cir. 2010); *Estate of Parsons*, 367 F.3d at 415; *United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997). This majority has grown since the United States Supreme Court decided *Nelson*. *See, e.g., Ajrawat*, 738 F. App'x at 139 (overruling an earlier decision and explaining that, "[i]n light of *Nelson*, we can no longer say that an order of restitution is an exception to" the doctrine of abatement *ab initio*). As the Ninth Circuit explained,

> [t]he Restitution Order must be abated because "the defendant is no longer a wrongdoer" once his conviction has abated. Just as it is inappropriate to impose restitution on a living individual who was never indicted or convicted, so it is inappropriate to impose restitution on the estate of a deceased individual who, in the eyes of the law, was never indicted or convicted. Abatement *ab initio* means what it says.

7

*Rich*, 603 F.3d at 729 (citation omitted).

¶ 12    This precedent — binding authority from the Colorado Supreme Court in *Cowen* and the United States Supreme Court in *Nelson*, as well as persuasive authority from the majority of federal circuit courts — convinces us that, when a defendant dies during the pendency of his direct appeal, the doctrine of abatement *ab initio* operates to extinguish not only his conviction but "everything associated with the case," including any restitution order.  *Griffin*, ¶ 4 (quoting *Estate of Parsons*, 367 F.3d at 413).  Abatement, which "leav[es] the defendant as if he had never been indicted or convicted," is thus legally indistinguishable from reversal.  *Id.* (quoting *Estate of Parsons*, 367 F.3d at 413).  In either case, the conviction is erased and the presumption of innocence restored.  *See Nelson*, 581 U.S. at ___, 137 S. Ct. at 1255; *Cowen*, ¶ 38.  We therefore respectfully disagree with *Daly* and conclude that restitution orders are subject to abatement *ab initio*.  *See People v. Smoots*, 2013 COA 152, ¶ 20 (stating that one division is not obligated to follow another division's precedent), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

## II. Section 18-1.3-603 Does Not Modify the Abatement *Ab Initio* Doctrine

¶ 13     We are not persuaded otherwise by the People's contention that the restitution statute, § 18-1.3-603, modifies the common law doctrine of abatement *ab initio*.

¶ 14     The People point specifically to section 18-1.3-603(4)(a)(I) and (II). Subparagraph (I) states that "[a]ny order for restitution entered pursuant to this section is a final civil judgment in favor of the state and any victim. Notwithstanding any other civil or criminal statute or rule, any such judgment remains in force until the restitution is paid in full." Subparagraph (II), in turn, states,

> [n]otwithstanding the provisions of subparagraph (I) of this paragraph (a), two years after the presentation of the defendant's original death certificate to the clerk of the court or the court collections investigator, the court may terminate the remaining balance of the judgment and order for restitution if, following notice by the clerk of the court or the court collections investigator to the district attorney, the district attorney does not object and there is no evidence of a continuing source of income of the defendant to pay restitution.

According to the People, "[t]hese provisions unambiguously contemplate that a defendant's restitution obligations continue even after his death."

9

¶ 15    We generally construe statutes to be consistent with the

common law.  *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004).

Although the General Assembly may modify or abrogate common

law, we can recognize such changes only when they are clearly

expressed.  *Id.*  Thus, "[s]tatutes in derogation of the common law

must be strictly construed, so that if the legislature wishes to

abrogate rights that would otherwise be available under the

common law, it must manifest its intent either expressly or by clear

implication."  *Id.* (quoting *Vaughan v. McMinn*, 945 P.2d 404, 408

(Colo. 1997)).  Applying this principle, we conclude that neither

subparagraph (I) nor subparagraph (II) of section 18-1.3-603(4)(a)

clearly modifies the doctrine of abatement *ab initio* to exclude

restitution orders.

¶ 16    First, that a restitution order is "a final civil judgment" under

section 18-1.3-603(4)(a)(I) does not necessarily save it from the

operation of the doctrine of abatement *ab initio.*  Section

18-1.3-603(1) expressly ties a restitution order to a conviction, but

a defendant's death during the pendency of his appeal abates his

conviction and "leav[es] the defendant as if he had never been

indicted or convicted."  *Griffin*, ¶ 4 (quoting *Estate of Parsons*,

10

367 F.3d at 413). And a defendant who has not been convicted retains the presumption of innocence and cannot be ordered to pay restitution. *Nelson*, 581 U.S. at ___, 137 S. Ct. at 1257-58; *Cowen*, ¶ 38; *Sosa*, ¶¶ 26-28.

¶ 17 Nor are we persuaded by the legislature's inclusion, in section 18-1.3-603(4)(a)(I), of the phrase, "Notwithstanding any other civil or criminal statute or rule, any such judgment remains in force until the restitution is paid in full." That phrase does not explicitly or by clear implication abrogate the common law doctrine of abatement *ab initio*, which is neither a statute nor a rule. *Vigil*, 103 P.3d at 327.

¶ 18 Second, applying the doctrine of abatement *ab initio* to restitution orders would not, as the People contend, "render the express term of section [18-1.3-]603(4)(a)(II) a nullity." That provision addresses what happens when a defendant dies before paying restitution in full, but it does not address the specific situation in which a defendant dies *during the pendency of his direct appeal*. When that happens, as discussed above, no valid conviction exists and, therefore, due process prevents the state from

11

collecting restitution. *Nelson*, 581 U.S. at ___, 137 S. Ct. at 1257-58; *Cowen*, ¶ 38; *Sosa*, ¶¶ 26-28.

¶ 19 We recognize that our conclusion could lead to unjust results for crime victims, who will not be able to receive restitution payments from the estates of defendants who die during the pendency of their direct appeals. But such outcomes are an inevitable consequence of the doctrine of abatement *ab initio*. The legislature or the Colorado Supreme Court may, of course, avoid such outcomes by abolishing or abrogating the doctrine altogether, as other jurisdictions have. *See, e.g., State v. Reed*, 456 P.3d 453, 456, 458-59 (Ariz. 2020) (recognizing the Arizona legislature's abolition of the doctrine of abatement *ab initio*); *State v. Al Mutory*, 581 S.W.3d 741, 750 (Tenn. 2019) (judicially abrogating the doctrine of abatement *ab initio* "because it is obsolete, its continued application would do more harm than good, and it is inconsistent with the current public policy of this State"). Until then, however, we are bound by the decisions of the Colorado Supreme Court and the United States Supreme Court. *See Nelson*, 581 U.S. at ___; 137 S. Ct. at 1257-58; *Cowen*, ¶ 38.

### III.   Remand Instructions

¶ 20    The case is remanded to the district court with directions to abate the criminal conviction; dismiss the charges against Johnson; vacate any orders concerning costs, fees, and fines; and vacate the restitution order.

¶ 21    After the district court completes the abatement proceedings, Johnson's counsel shall immediately forward a copy of the district court's order to this court.  The district court shall construe entry of the abatement order as recertification of the matter on appeal.  Thereafter, this court will dismiss the appeal.

¶ 22    If this matter is not concluded within thirty-five days from the date of this order, Johnson's counsel shall notify this court in writing of the status of the district court proceedings.  Johnson's counsel shall file status reports every thirty-five days until the district court completes the abatement proceedings.

JUDGE ROMÁN and JUDGE TOW concur.